## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

TERESA PRUETT,                              )
                                            )
          Plaintiff,            )
vs.                                         )          NO.  CIV-12-0947-HE
                                            )
BOARD OF COUNTY                             )
COMMISSIONERS  OF CLEVELAND                 )
COUNTY, OKLAHOMA, ET AL.,                   )
                                            )
        Defendants.              )

## ORDER

According to the Second Amended Complaint, plaintiff is the special administrator of the estate of Curtis Gene Pruett.  She asserts claims against the Board of County Commissioners of Cleveland County, Oklahoma, the Sheriff of Cleveland County Joe Lester, and various deputies and detention officers of the county, arising out of the death of Mr. Pruett while in defendants' custody.  Lester and the other individual defendants are sued in both their individual and official capacities.  Specifically, plaintiff alleges claims under 42 U.S.C. § 1983 for violation of Mr. Pruett's constitutional right to adequate medical attention while in custody, as well as state law claims for negligence, violation of the state open records act, and civil conspiracy.  Defendants Board of County Commissioners of Cleveland County and Sheriff Lester, in both his capacities, have moved to dismiss the claims against them pursuant to Fed.R.Civ.P. 12(b)(6).  The motion is at issue.

Allegations of the Complaint

The complaint generally alleges that Mr. Pruett's vehicle became "immobilized" at approximately 3:00 a.m. on October 15, 2011. It alleges Mr. Pruett, who had a history of high blood pressure, was experiencing shortness of breath and chest pains and that he sought help from a nearby homeowner. Sheriff's deputies Shroyer and Sites arrived and were allegedly told by plaintiff about the high blood pressure and his need for medical help. The complaint alleges the deputies ignored the request for medical help and took Pruett to jail for suspicion of public intoxication. According to the complaint, Pruett continued to complain to jail personnel, including deputies and/or detention officers Hailey, Baxter, Douglas and others, of chest pain and that he was taking medication for high blood pressure, but no medical help was procured. Mr. Pruett was later found dead in his cell as a result of a heart attack. The complaint also alleges incidents involving three other persons who are claimed to have received inadequate care during their periods of custody.

Discussion

Rule 12(b)(6) authorizes a court to dismiss a claim when a party fails "to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion, all well-pleaded factual allegations in the complaint are accepted as true and construed in the light most favorable to the nonmoving party. Peterson v. Grisham, 594 F.3d 723, 727 (10th Cir. 2010). Unsupported, conclusory allegations, however, need not be accepted as true. *See* Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011). Further, "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will

2

not suffice." <u>Khalik v. United Air Lines</u>, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).   The question is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at  570.

Section 1983 claim

The moving defendants seek dismissal of the § 1983 claim on the basis the complaint contains no allegations that either the Board or Sheriff Lester did anything wrong and that, since there is no *respondeat superior* liability under § 1983, therefore no claim is stated. However, the absence of *respondeat susperior* liability (which plaintiff concedes) does not necessarily control the result here.   As a threshold matter, it is important to recognize who the Board of County Commissioners and the sheriff (in his official capacity) are.   They are, in substance, Cleveland County.   Under Oklahoma law, the county is sued by naming the Board of County Commissioners as a defendant.   19 Okla. Stat. § 4.   Further, an official capacity suit against the sheriff is, in substance, an action against the county.   An official capacity suit "is, in all respects other than name, to be treated as a suit against the entity." <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985).   So the actual inquiry here is whether or not the complaint states a claim against Cleveland County.   As to the § 1983 claim, that is not necessarily dependent on whether the Board, or one of its members, or the sheriff, took any specific action with respect to Mr. Pruett.

In order to establish county liability under § 1983, a plaintiff must first establish that his constitutional or other rights were violated by someone acting under color of law.   Then

3

the question becomes whether there is a basis for imposing liability on the county or other political subdivision for that violation. Here, plaintiff alleges that his Fourteenth Amendment right to adequate medical care was violated. Under the Fourteenth Amendment, "pretrial detainees are . . . entitled to the degree of protection against denial of medical attention which applies to convicted inmates" under the Eighth Amendment. Garcia v. Salt Lake Cnty., 768 F.2d 303, 307 (10th Cir. 1985). A claim for inadequate medical care will be successful if the plaintiff establishes "deliberate indifference to serious medical needs." Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). An inadvertent failure to provide adequate medical care does not constitute a constitutional violation. Estelle, 429 U.S. at 105-06.

The test for deliberate indifference has both an objective and a subjective component. Callahan v. Poppell, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met if the harm suffered by the plaintiff is sufficiently serious to be cognizable under the Eighth Amendment. Martinez, 563 F.3d at 1088. The subjective component requires a showing that the defendant knew the plaintiff faced a substantial risk of harm, yet disregarded that risk by failing to take measures to avoid or end it. Id. at 1089.

Whether a county or other political subdivision is liable for someone's deliberate indifference depends on whether a plaintiff can establish that the constitutional violation is attributable to a policy or custom of the subdivision — whether the political subdivision is a "moving force" behind the deprivation. Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981) (quoting Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978)). Stated

4

otherwise, the entity will be liable under § 1983 only where its employee's unconstitutional conduct occurred while the employee was carrying out a policy or custom of the entity.  A county or municipality "will only be held liable for its own acts – acts it 'has officially sanctioned or ordered.'"  Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1188 (10th Cir. 2010) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)).  The Tenth Circuit has characterized the test as being whether plaintiff has shown (1) the existence of a [county] policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged.  Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th Cir. 2010).

Here, the court concludes plaintiff has alleged enough to state a claim against the county.  Mr. Pruett's death obviously satisfies the objective element that the violation be of sufficient seriousness.  The allegations that Mr. Pruett repeatedly, over an extended period of time, told the deputies or detention officers of severe chest pains, his high blood pressure, and taking medications for same, coupled with the allegations of no medical treatment being provided or sought, are sufficient to support an inference that the officers knew of the substantial risk of harm to Mr. Pruett and failed to act to abate it.  Plaintiff thus makes out a plausible claim for deliberate indifference on the part of the officers.

The question is closer as to whether there is a basis for holding the county liable for the alleged violations by its employees, but the court concludes the allegations are sufficient — barely — to indicate a custom and practice of not responding, or responding inadequately, to pretrial detainees displaying symptoms showing a need for medical treatment.  The

amended complaint sets out, in addition to certain largely conclusory allegations, facts as to three other persons in the relatively recent past who allegedly experienced similar problems (inadequate reaction to their medical needs) while at the Cleveland County Detention Center. Plaintiff also relies on, in addition to a practice of not responding appropriately, a failure to train its employees as a basis for county liability.  That is potentially a basis for establishing the necessary policy or practice, *see* <u>Bryson</u>, 627 F.3d at 788, and the alleged pattern of inadequate response arguably invokes that theory as well.  The alleged circumstances also permit the necessary inference of a direct causal connection between the claimed custom and practice and the injury to Mr. Pruett.  While there is some reason to doubt whether plaintiff will ultimately be able to establish county liability, the present decision is in the context of a motion to dismiss and the court concludes the allegations are sufficient to state a claim evaluated against the <u>Twombly</u> standard.

The court's conclusion is otherwise as to the claims against Sheriff Lester in his individual capacity.  As noted above, there is no *respondeat superior* liability for a supervisor under § 1983 and the complaint contains no allegations suggesting that Sheriff Lester personally participated in, or otherwise directed, the alleged violations of Mr. Pruett's constitutional rights.  Therefore, no claim is stated against him in his individual capacity.[1]

### State law claims

Plaintiff's other three causes of action are based on state law and include a negligence

---

[1]*This determination renders it unnecessary to determine whether Sheriff Lester might also be shielded from potential individual capacity liability by the doctrine of qualified immunity.*

claim, a claim for a violation of the Oklahoma Open Records Act, and a civil conspiracy claim.[2]  The tort claim alleges that defendants negligently failed to provide Mr. Pruett with medical treatment at the time of his arrest and detention.  Defendants Board and Sheriff Lester allege they are immune from liability for this tort under the Oklahoma Government Tort Claims Act, 51 Okla. Stat. §§ 151 et seq. ("OGTCA").  Although the OGTCA effects a limited waiver of political subdivision immunity for employee torts in most circumstances, § 155 outlines "carefully circumscribed exemptions" to this liability.  Salazar v. City of Okla. City, 976 P.2d 1056, 1066 (Okla. 1999).  Defendants rely on three of these exemptions from liability: exemptions for the performance of discretionary acts, § 155(5), for the failure to provide or the method of providing police or law enforcement protection, § 155(6), and for the provision, equipping, operation or maintenance of a prison, jail or correctional facility, § 155(24).

Defendants have not developed in any meaningful way their argument that the discretionary function exemption of § 155(5) applies here and the court declines to resolve the present motion on the basis of that section.

As to the exemption provided in § 155(6), the court concludes it does not warrant dismissing plaintiff's claim at this point.  Section 155(6) exempts political subdivisions from claims that result from "the failure to provide, or the method of providing, police, law

---

[2]*The complaint does not purport to state a claim for violation of the Oklahoma Constitution. See generally, Bosh v. Cherokee Cnty. Bldg. Auth., ___P.3d___, 2013 WL519897 (Okla. Feb. 12, 2013).  The court expresses no view as to whether the rule newly announced in Bosh would extend to the circumstances alleged here.*

enforcement or fire protection."  Although the Oklahoma cases are not altogether clear in defining the application of this section, the Oklahoma Supreme Court has emphasized that "protection" is the key word in interpreting it.  It has concluded that a governmental subdivision is immune "for deficiency of protective services extended by its police, law enforcement or fire fighting components." Salazar, 976 P.2d at 1066 (emphasis and citation omitted).  The court distinguished between providing protective services and carrying out law enforcement functions, holding that § 155(6) immunity does not extend to the latter.  *Id*. Although it seems arguable that the provision of medical services to one already in custody is of a protective nature, at least one Oklahoma case appears to have concluded otherwise and viewed circumstances similar to those alleged here as being something other than an immune protective function.  Prichard v. City of Okla. City, 975 P.2d 914, 917 (Okla. 1999).  While the issue is not free from doubt, the court concludes that, on the present showing, § 155(6) does not obviously bar plaintiff's negligence claim and therefore declines to dismiss the claim on that basis.

Defendants also rely on 51 Okla. Stat. § 155(24) as a basis for immunity.  This provision of the OGTCA immunizes political subdivisions against claims resulting from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility." The Oklahoma Supreme Court has stated "the purpose and intent of [§ 155(24)] is to protect the state and political subdivisions from tort liability for loss resulting from the functions of the officers and employees performed in the operation of a penal institution."  Medina v. State, 871 P.2d 1379, 1383 (Okla. 1993).  That court reiterated this holding in Redding v.

8

State, 882 P.2d 61, 63 (Okla. 1994) (noting that the purpose of what is now § 155(24) "is to protect the state from liability for loss resulting from *any and all actions* of officers and employees of a penal institution." (emphasis added)).  These authorities preclude plaintiff's state tort claims to the extent they are premised on the alleged denial of medical care after Mr. Pruett was detained at the Cleveland County Detention Center.

Defendants have also moved to dismiss all the state law tort claims against Sheriff Lester personally, and plaintiff appears to concede the issue [Doc. #26 at 16].   Under the OGTCA, state employees acting within the scope of their employment are immune from liability for their torts.  51 Okla. Stat. §§ 152.1(A), 153, 163(C).  The complaint contains no allegations suggesting that Sheriff Lester or any of the other employees were acting outside the scope of their employment, and instead alleges defendants acted "by and through their employees acting within the course and scope of their employment" [Doc. #18 at 7].  The state tort claims against Sheriff Lester personally will be dismissed.

Plaintiff also purports to state a claim for civil conspiracy.  The complaint's allegations as to such a claim are wholly conclusory, alleging only that defendants "have conspired to withhold and/or falsify" certain reports "all in an effort to cover up the violation of decedent's constitutionally protected rights as set forth herein, and in violation of the Oklahoma Open Records Act . . . ." [Doc. #18 at 8-9].  The complaint lacks factual allegations as to a civil conspiracy sufficient to state a claim to relief that is plausible on its face.  Accordingly, plaintiff's fourth cause of action will be dismissed.

<u>Conclusion</u>

9

Defendants' motion to dismiss [Doc. #25] is **GRANTED in PART** and **DENIED in PART**.  The motion is granted, and the claims dismissed, as to the § 1983 claim against Sheriff Lester in his individual capacity, all state law claims against Sheriff Lester personally, the civil conspiracy claim, and the negligence claim to the extent it is based on the actions of the detention officers following Mr. Pruett's arrival at the jail.  The motion is otherwise denied.  Defendants' first motion to dismiss [Doc. #10], which was directed to the original complaint rather than the current amended complaint, is **STRICKEN** as **MOOT**.

Remaining for resolution are the § 1983 claim against the County, the negligence claim against the County based on the alleged failure of the arresting officers to secure medical assistance, and the open records act claim.[3]

**IT IS SO ORDERED**.

Dated this 20th day of February, 2013.

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[3]*The open records claim was not challenged by the present motion, apart from suggesting that the court decline to exercise supplemental jurisdiction over it if the federal claims were dismissed.*